UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS SENTEMENTES,<br>    Plaintiff, | : <br> : <br> : <br> : | CASE NO. 3:21-cv-453 (MPS) |
| v. | : <br> : | |
| QUINN, et al.<br>    Defendants. | : <br> : <br> : <br> : | JULY 20, 2022 |

**RULING ON REDDING POLICE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.     Introduction**

The plaintiff, Thomas Sentementes, has sued police officers of the Town of Redding, Connecticut, and private citizens asserting federal and state law claims relating to his arrest. At this point, the only claims that remain against the police officers, Sergeant Quinn, Officer Vadas, and Officer Peterson,[1] ("the defendants") are a federal claim for false arrest and a state law claim for intentional infliction of emotional distress ("IIED"). *See* Initial Review Order, ECF No. 8. The defendants have filed a motion for summary judgment. Because I find that the police had probable cause, and at least arguable probable cause, to arrest Sentementes, I grant the motion as to the federal false arrest claim. Further, because all remaining claims in the case arise under state law, including the claims against the private citizens, I decline to exercise supplemental jurisdiction over those claims and dismiss them without prejudice, which means that

---

[1] The plaintiff incorrectly identifies this defendant in the Complaint as Officer Patterson. The Court uses the correct spelling in this order.

Sentementes may pursue those claims in state court.

## II. Standard

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P. The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). In deciding a motion for summary judgment, the court must draw all reasonable inferences from the evidence in favor of the non-moving party. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## III. Facts[2]

---

[2] The facts are taken from the defendants' Local Rule 56(a)1 Statement and supporting exhibits. Local

On January 21, 2020, the plaintiff called the Redding Police Department and asked for a police presence at the West Redding Post Office. Defs.' Local Rule 56(a)1 Statement, ECF No. 90-2, ¶ 4. When Officer Peterson arrived at the West Redding Post Office in response to the plaintiff's request, the plaintiff was not there. *Id.* ¶ 5. Officer Peterson was aware of a pre-existing protective order that was in place against the plaintiff. *Id.* ¶ 6. As the protected individual, Pasqualina Bastone, was the owner of the liquor store across the street from the post office, Officer Peterson drove across the street and parked in the liquor store parking lot to check on Bastone. *Id.* The restraining order issued against the plaintiff provided that the plaintiff was not to threaten, abuse, harass, follow, interfere with, or stalk Bastone. *Id.* ¶ 12.

The liquor store is located at 2 Long Ridge Road in Redding and is in the same plaza as a

---

Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3.

Although the defendants informed the plaintiff of this requirement, *see* ECF No. 91, the plaintiff has not filed a Local Rule 56(a)2 Statement. When the defendants noted this omission in their reply brief, the plaintiff first claimed that he was unable to obtain a copy of the Federal Rules of Civil Procedure and should be afforded leniency as he is self-represented. *See* ECF No. 100 at 1. However, the defendants provided the plaintiff copies of the applicable local and federal rules with their motion for summary judgment. Indeed, as three motions for summary judgment were filed in this case, the plaintiff received three copies of the applicable rules. The requirement to file a Local Rule 56(a)2 Statement does not require any specialized legal knowledge. Self-represented litigants are not excused from complying with court rules. *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law'") (citation omitted); *see also Ezeh v. McDonald*, No. 13-CV-6563, 2017 WL 4217170, at *2 (W.D.N.Y. Sept. 20, 2017) ("'Although pro se litigants should be afforded latitude, they 'generally are required to inform themselves regarding procedural rules and to comply with them,'" especially in civil litigation.") (citations omitted).

The plaintiff also states that the court should assume from his submission of a list of genuine issues of material fact that he disagrees with any statements relating to those issues. *See* ECF No. 100 at 3 (explaining that, where he produced evidence purporting to show a defendant lied, "then it can be summized" that the plaintiff admits facts leading up to the alleged lie but disputes the statement he considers a lie). He did not, however, submit a Local Rule 56(a)2 Statement with his reply. The Court has reviewed the exhibits submitted by the plaintiff. As he did not file the required Local Rule 56(a)2 Statement, any of the defendants' statements supported by admissible evidence of record are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.").

pizzeria formerly owned by Bastone. *Id.* ¶ 7. When she arrived in the liquor store parking lot, Officer Peterson saw that the plaintiff was a passenger in a vehicle that pulled in next to her police vehicle. *Id.* ¶ 8. The plaintiff got out of the vehicle and told Officer Peterson that he was there to shut down the pizzeria and kick out the current tenants, claiming that he owned the pizzeria and they were improperly operating it. *Id.* ¶ 9. Officer Peterson noted that the plaintiff was "speaking enthusiastically" and smelled of alcohol. *Id.* ¶ 10. The plaintiff was holding various papers, later determined to be court papers showing that he had applied for a restraining order against Bastone. *Id.* ¶ 11. The plaintiff contends that he was holding a copy of one of the two restraining orders against him. Pl.'s Mem. ECF No. 95 at 8 ¶ 3A.

Officer Peterson spoke to the new owners of the pizzeria, Thomas Costanzo and Gina Oriole, who told her they had purchased the pizzeria from Bastone. ECF No. 90-2 ¶ 17. Officer Peterson told the plaintiff that the pizzeria was under new ownership and the new owners did not want to speak to him and did not want him on their property. *Id.* ¶ 15. The plaintiff said that he would return the following day to kick everyone out of the pizzeria, have them arrested, and change the locks. *Id.* ¶ 16. The plaintiff insisted that a judge had told him he could have his pizzeria back. *Id.*

On January 22, 2020, John Wanat, the owner of the building at 2 Long Ridge Road and landlord for the liquor store owned by Bastone and the pizzeria owned by Costanzo, called the Redding Police Department to report a Facebook post discovered by his son, Sean Wanat. *Id.* ¶ 19. John Wanat said that the Facebook post appeared to have been posted on the plaintiff's personal Facebook page under the name Tom Lo Dulce. *Id.* ¶ 20. Officer Vadas met with John Wanat in person about the post and gave a copy of the post to Sergeant Quinn for review when he returned to the Redding Police Department. *Id.* ¶¶ 21-22. The Facebook post states as

4

follows:

> On 12/20/18 Linas[3] heart stopped and she died in my arms[.] I gave her cpr for 5 mins and revived her[.] 33 days later she said I tried to kill her and filed false statements against me[.] I spent a year in jail I represented myself and won I still have 2 more trials with her I have two restraining orders against her she has to hand over all keys to all 3 stores to me tonight with the cell phone if not she goes to jail[.] Tommy Castanzo thought he was gonna fuck my ex and steal my restaurant from me well tonight it gets closed to all you[.] I tried contacting for help you can all go FUCK YOURSELVES[.] I'm pushed to my limit[.] I want to see one of you ASSHOLES fuck with me the next one that makes a false statement against me will have put the straw that broke the camel[']s back on me try me ASSHOLES TRY ME[.]

ECF No. 90-8 at 4.

Sergeant Quinn was aware of pending criminal matters against the plaintiff in Danbury Superior Court and contacted the State's Attorney's Office at that court to inform the office of the Facebook post. ECF No. 90-2 ¶ 23. The State's Attorney's Office told Sergeant Quinn that Bastone had already made them aware of the post and directed Sergeant Quinn to apply for an arrest warrant based on the post's contents. *Id.* ¶ 24.

On January 22, 2020, Officer Peterson met separately with Bastone and Costanzo who each provided a sworn statement regarding the Facebook post. *Id.* ¶¶ 32, 34. Also on January 22, 2020, Officer Succi called the plaintiff to ask about the Facebook post. *Id.* ¶ 36. The plaintiff stated that the post was intended to explain that he was having the two businesses served with court orders directing that the keys to the businesses be surrendered to the plaintiff. *Id.*

On January 24, 2020, a Redding police officer picked up copies of an Order for and Notice of Court Hearing Return of Service Relief from Abuse from Bastone who had been

---

[3] "Lina" refers to Pasqualina Bastone.

served with the document by a judicial marshal. *Id.* ¶ 13. Although the notice was served on Bastone, it was addressed to Pasqualina Comito, Bastone's maiden name. *Id.* ¶ 14.

Officer Vadas prepared an Arrest Warrant Application and filed it on January 24, 2020. *Id.* ¶ 26. Judge Brazzel-Massaro granted the application the same day. *Id.* ¶ 27. On January 27, 2020, the Redding Police Department received a call from the Danbury Superior Court stating that the plaintiff was present in the court on a separate criminal matter. *Id.* ¶ 28. Officer Vadas went to the court and arrested the plaintiff pursuant to the signed Arrest Warrant. *Id.* ¶ 29. The same day, Officer Vadas gave the plaintiff a Notice of Rights-Bail form stating that he would be held on $50,000 bail. *Id.* ¶ 29. The plaintiff was charged with one count of Violation of a Protective Order. *Id.* ¶ 31.

On February 28, 2020, the plaintiff was convicted after a jury trial in a separate criminal case. *Id.* ¶ 38. On November 25, 2020, he was sentenced to a term of imprisonment of eight years to be followed by two years of special parole. *Id.* ¶ 39. At an additional hearing on December 3, 2020 to clarify the terms of the plaintiff's sentence, the State indicated that it was satisfied with the length and severity of the sentence that had been imposed in the separate criminal case and entered a nolle prosequi on the violation of a protective order charge, the charge underlying this action. *Id.* ¶ 40.

**IV.     Discussion**

The defendants move for summary judgment on the false arrest claim on the grounds that the plaintiff's arrest was supported by probable cause and that they are protected by qualified immunity. They seek summary judgment on the claim for intentional infliction of emotional distress on the ground that arresting a person in accordance with a duly issued warrant is not conduct that exceeds the acceptable bounds of decent society.

### A. False Arrest

"To state a valid claim for false arrest ... under § 1983, a plaintiff must plead an unreasonable deprivation of liberty in violation of the Fourth Amendment and satisfy the state law elements of the underlying claim[]." *Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012) (citing *Jaegly v. Couch*, 439 F.3d 149, 151-52 (2d Cir. 2006)). In Connecticut, a plaintiff asserting a claim for false arrest must prove an absence of probable cause. *See Cuadrado v. Bristol Police Dept.*, No. CV145015961, 2015 WL 2458187, at *2 (Conn. Super. Ct. Apr. 28, 2015) ("The plaintiff bears the burden of demonstrating a lack of probable for the arrest").

"Under both federal and Connecticut law, 'probable cause to arrest exists when police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Mara v. Rilling*, 921 F.3d 48, 69 (2d Cir. 2019) (quoting *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (internal quotation marks omitted)). Probable cause does not demand that an officer's belief that a person has committed a crime be "correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983). To demonstrate probable cause, the office need only present facts to support "the sort of fair probability on which reasonable and prudent people, not legal technicians, act." *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013) (citation, brackets, and internal quotation marks omitted). "[D]eterminations about probable cause are made based upon the totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When the court evaluates the circumstances to determine whether probable cause existed to support an arrest, the court "must 'consider the facts available to the officer at the time of the arrest.'" *Bardinelli v. Bukowski*, No. 3:05-CV-01943(AVC), 2008 WL 11477113, at *6 (D. Conn. Mar. 25, 2008) (quoting *Ricciuti v.*

*New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)).

"Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause, ... and a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." *Brown v. Aybar*, 451 F. Supp. 2d 374, 381-82 (D. Conn. 2006) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)) (quotation marks omitted). Here, a warrant was issued by a state court judge for the plaintiff's arrest. Thus, "the plaintiff must make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was necessary to the finding of probable cause." *Id.* at 382 (quoting *Golino*, 950 F.2d at 870) (quotation marks omitted).

The plaintiff was arrested for violation of a protective order. There were two orders in effect in January 2020. Both identified Pasqualina Bastone as the protected person and the plaintiff as the respondent. The plaintiff has submitted a copy of the restraining order entered in Case No. DBD-FA19-4021808-S. That order, signed February 8, 2019[4] and effective through February 8, 2020, included the following condition: "Do not assault, threaten, abuse, harass, follow, interfere with, or stalk the protected person." Pl.'s Mem. Ex. F, ECF No. 95-1 at 19. The order incorporated an additional order of protection that provided: "Respondent is to stay away from liquor store at 23 PT Barnum Sq. Bethel, CT and liquor store at 2 Long Ridge Rd. Redding, CT. Respondent is permitted to enter pizzeria at 2 Long Ridge Rd. Redding, CT." *Id.*

---

[4] Although the order was signed on February 8, 2019, the arrest warrant affidavit states that the order was issued on June 6, 2019. Defs.' Mem. Ex. H, ECF No. 90-11 at 6. As both dates precede the incident underlying the plaintiff's arrest, the actual issue date is immaterial to the analysis.

8

at 20.

The plaintiff's arrest, however, is based on a second, more restrictive, criminal protective order that also was in effect in January 2020. This order was issued on January 28, 2019 in Case No. D03DCR19-159112-S and includes the following restrictions:

> -Not to assault, threaten, abuse, harass, follow, interfere with, or stalk the protected person
> -Stay away from the home of the protected person and everywhere the protected person shall reside
> -Do not contact the protected person in any manner, including written, electronic or telephonic contact, and do not contact the protected person's home, workplace or others whom the contact would likely cause annoyance or alarm to the protected person
> -Stay 100 yrds away from the protected person[.]

Defs.' Mem. Ex. H, Arrest Warrant Application ¶ 10, ECF 90-11 at 6. The plaintiff does not dispute the existence of or the restrictions in this criminal protective order.

The primary impetus for the arrest warrant was the Facebook post. The post contains threatening language. When asked about the post, the plaintiff stated that the post meant only that he was having the businesses served with court orders directing the owners to surrender the keys to him. *See* Defs.' Mem. Ex. E, ECF No. 90-8 at 6. However, the post makes no reference to court orders and the threats appear directed at Bastone and Costanzo as well as others. *See* Defs.' Mem. Ex. G, ECF No. 90-10 at 3 & Ex. H, ECF No. 90-11 at 5 (stating that Bastone had to "hand over all keys to all 3 stores to me tonight" and that "tonight [the store] gets closed to all of you," and asserting that "I'm pushed to my limit" and that Bastone had "filed false statements" against him and that "the next one that makes a false statement against me will have put the straw that broke the camel[']s back on me try me ASSHOLES TRY ME").

The police interviewed Bastone who expressed fears of harm from the plaintiff and her belief that he was harassing her. She also stated that the plaintiff's claims of ownership of the

9

businesses were false. The plaintiff disputes Bastone's veracity arguing, without evidence, that he does have ownership interests in the restaurant and liquor stores and claiming that her statement, contradicting a portion of the Facebook post, that the plaintiff did not perform CPR on her, is also false. In the Facebook post, the plaintiff stated that Bastone's heart stopped, she died, and she was revived only because he performed CPR on her for five minutes. ECF No. 90-10 at 3. The plaintiff submits a copy of the EMT report of the incident, which states only that Bastone fainted after exercising on an inversion table. ECF No. 95-1 at 31. Thus, the plaintiff's own evidence supports Bastone's statement that she did not die and did not require CPR. The plaintiff has not submitted evidence showing that Bastone was not reasonably trustworthy.[5]

When a law enforcement officer receives a report of a crime from the putative victim or an eyewitness, it is well-established that the officer has probable cause to arrest. *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (citation and quotation marks omitted); *see also Lowth v. Town of Cheektowaga*, 82 F.3d 563, 570 (2d Cir. 1996) ("[P]robable cause for an arrest must be determined on the basis of the information reasonably available to the arresting office at the time of the arrest, not on the basis of what the arrested party believed to be happening."). Further, "[o]nce a police officer has a reasonable basis to believe there is probable cause to arrest, the officer is not required to explore or eliminate every theoretically plausible claim of innocence before making an arrest." *Bate v. City of New York*, No. 15 CIV. 2631(PGG), 2018 WL 4757940, at *22 n.15 (S.D.N.Y. Sept. 30, 2018) (quoting *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) and citing cases); *see also Cafasso v. Nappe*, No. 3:15-

---

[5] At one point, the plaintiff appears to concede all witnesses interviewed by the police were trustworthy. *See* ECF No. 95 at 19 ("There is not one person in this case that their ver[a]city has not been proven to be in good faith.").

CV-920(MPS), 2017 WL 4167746, at *7 (D. Conn. Sept. 20, 2017) ("[D]uring an investigation into an alleged crime, an arresting office is not obligated to pursue every lead or engage in extensive fact-finding that may yield evidence beneficial to the accused" and generally "has no duty to investigate exculpatory defenses." (internal quotation marks and citation omitted)). The law governing arrests permits police officers to credit one witness's version of events over another's if there is a reasonable basis to do so. *Streater v. West Haven, Police Dep't*, No. 3:19-CV-465(MPS), 2022 WL 1720355, at *4 (D. Conn. May 27, 2022) (citing *Ricciuti*, 124 F.3d at 128). The defendants had reasonably trustworthy information from the victim and the threatening language in the Facebook post that the plaintiff had violated the prohibition against threatening Bastone; this is enough for probable cause to support the plaintiff's arrest.[6]

The plaintiff challenges the accuracy of several statements in the arrest warrant application. He contends that, absent these statements, the application would not establish

---

[6] The plaintiff originally alleged that the defendants violated his First Amendment rights when they sought an arrest warrant against him for exercising his right to freedom of speech on a social media page accessible only to friends and family. ECF No. 1 at 7 ¶ 8. The Court dismissed this claim on initial review, stating that "[t]he First Amendment ... does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." ECF No. 8 at 4-5 (quoting *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) (internal quotation marks omitted)).

The Supreme Court has held that "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech". *Nieves v. Bartlett*, ___ U.S. ___, 139 S. Ct. 1715, 1722 (2019) (citation and internal quotation marks omitted). An individual may bring a First Amendment claim "[i]f an official takes adverse action against [him] based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences." *Id.* at 1722 (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (internal quotation marks omitted)).

In the context of a claim for retaliatory prosecution, the Supreme Court has held that, because the decision to prosecute is made by a prosecutor while the retaliatory animus may be attributed to a police officer, the causal nexus between retaliatory intent and the plaintiff's injury is more difficult to prove. *Nieves*, 139 S. Ct. at 1723 (citing *Hartman*, 547 U.S. at 261). To address this difficulty and to preserve "the presumption of regularity underlying the prosecutor's charging decision," "*Hartman* requires plaintiff in retaliatory prosecution cases to show more than the subjective animus of an officer and a subsequent injury; plaintiffs must also prove as a threshold matter that the decision to press charges was objectively unreasonable because it was not supported by probable cause." *Id.* Thus, to the extent that the plaintiff's claim is construed as a claim for retaliatory prosecution, it fails because the Court has determined that the plaintiff has not met his burden of showing that his arrest was not supported by probable cause.

11

probable cause for his arrest. First, the plaintiff contends that Officer Peterson lied when she stated in her incident report—a statement repeated in the arrest warrant affidavit—that the only paperwork the plaintiff had with him when she met him on January 21, 2020 was an application for a restraining order and that he did not have a restraining order against Bastone or any paperwork showing he owned the pizzeria. ECF No. 90-7 at 3; ECF No. 90-11 at 7. The plaintiff does not submit a copy of the documents he had with him on January 21, 2020. In his opposition papers, he states that he had a copy of the restraining order issued in the family case in which the judge stated he could enter the pizzeria. *See* ECF No. 95 at 8 ¶¶ 3-4. Even if he had a copy of the restraining order with him, that order only permitted the plaintiff to enter the pizzeria just as any member of the public could. It did not, as the plaintiff contends, state that the pizzeria belonged to him or that he "had every right to enter his pizzeria and do whatever he wanted, including closing it." *Id.* ¶ 3. Thus, the statement that he had no papers showing ownership is correct. The plaintiff also was subject to the protective order in the criminal case, which prohibited him from contacting anyone if that contact would annoy or alarm Bastone. Under the circumstances, the plaintiff's contact of Costanzo to claim ownership of the pizzeria would annoy or alarm Bastone.

The plaintiff also challenges the statement in the arrest warrant affidavit claiming that in seeking to have his application for restraining order served on Bastone, he neglected to inform the court of the protective order issued in the criminal case and, instead, provided an incorrect criminal case number. The affidavit stated that there was no match for Case No. DBD-CR19-0159352-S on the Connecticut judicial website. The Court has checked the case number and confirmed that there is no case with this number. There is a criminal case against Thomas Sentementes, Case No. *D03D*-CR19-0159352-S (emphasis added), but that is not the case

number the plaintiff listed. Thus, although a more thorough search would have revealed the actual case, the statement in the arrest warrant affidavit is correct. Further, the plaintiff provides no evidence showing that a protective order with the same terms was issued in that case.[7] Thus, the statement that the plaintiff did not alert the state court to the criminal protective order in Case No. D03D-CR19-159112-S is correct.[8]

The plaintiff makes much of the fact that, in the arrest warrant affidavit, Officer Vadas characterized the plaintiff's request for assistance to the Redding Police Department as "in conflict with the spirit of the Criminal Protective Order...." ECF No. 90-11 at 6 ¶ 11. The Court finds no fault with Officer Vadas' concession that, although he considered the action problematic, this particular action did not actually violate the criminal protective order, inasmuch as there were independent grounds, as discussed above, to support probable cause.

The plaintiff fails to make the substantial showing necessary to overcome the presumption of probable cause that attaches to a warrant issued by a judicial officer. That is, he fails to present evidence showing that Officer Vadas made a false statement in the affidavit either knowingly and intentionally or with reckless disregard for the truth. The defendants' motion for summary judgment is granted on the false arrest claim.

### B. Qualified Immunity

---

[7] In his opposition, the plaintiff states that the only reason to list a criminal case number is that there is an active protective order in the case and states that the court can verify the existence of a protective order and support for his claim that the defendants lied by checking the criminal docket. *See* ECF No. 95 at 20 ¶ 12. State court criminal docket sheets are not available to the public. Thus, the Court can verify only that the case exists. It is the plaintiff's responsibility to present the evidence required to oppose the defendants' motion for summary judgment. Although the court has a greater burden and greater responsibility to see that justice is done where the plaintiff is self-represented, the court "need not act as an advocate for *pro se* litigants." *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998). Here, the Court declines to assume the role of the plaintiff's advocate.

[8] In any event, neither this statement nor Officer Peterson's statement about the papers the plaintiff possessed on January 21, 2020, was necessary to the finding of probable cause, because there was an adequate basis to find a threat based on the Facebook post and the interview of Bastone.

The defendants also argue that even if the plaintiff's arrest was not supported by probable cause, they are protected by qualified immunity. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity may be invoked "when, even though plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the action complained of, it was nonetheless 'objectively reasonable' for the defendant official 'to believe that his acts did not violate those rights.'" *Rodriguez v. Phillips*, 66 F.3d 470, 475 (2d Cir. 1995) (citation omitted). Qualified immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerscmidt v. Millender*, 565 U.S. 535, 553 (2012)). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law." *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010)); *see also Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("The relevant question ... is the objective (albeit fact-specific) question whether a reasonable officer could have believed [the officer's conduct] to be lawful, in light of clearly established law and the information the ... officers possessed.").

As discussed above, the plaintiff contends that the arrest warrant affidavit contained a misrepresentation that the criminal case he cited did not exist. "If a plaintiff alleges that a warrant affidavit included an omission or misrepresentation, the 'corrected affidavit' doctrine nonetheless allows the grant of qualified immunity if a hypothetical corrected affidavit demonstrates probable cause." *Chase v. Penney*, No. 20-3234-cv, 2021 WL 4519707, at *2 (2d

Cir. Oct. 4, 2021) (summary order) (citing *McColley v. County of Rensselaer*, 740 F.3d 817, 823 (2d Cir. 2014)), *cert. dismissed sub nom. Colangelo v. Chase,* 142 S. Ct. 1405 (2022).  Under the corrected affidavit doctrine, the defendants must show an absence of material facts regarding whether the material misrepresentations or omissions in the warrant application were intentionally or recklessly made, and whether the representations or omissions were necessary to, or would have negated, a finding of probable cause.  *Brown,* 451 F. Supp. 2d at 382.

As discussed above, the statements regarding the plaintiff's ownership of the pizzeria and the existence of the criminal case were not incorrect.  In any case, as explained above, the alleged misstatements were not necessary to the finding of probable cause.

The plaintiff also argues that the fact that the defendants spoke to the State's Attorney's Office before seeking the arrest warrant shows that probable case was lacking.  This is incorrect.  Another judge in this district has found—and I agree—that the fact that police officers sought advice from the State's Attorney before effecting an arrest "further supports a finding that their actions were objectively reasonable." *Klein v. Glick*, No. 3:19-CV-1056(SRU), 2020 WL 5097444, at *6 (D. Conn. Aug. 28, 2020) (citing *Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th Cir. 2004)).  Thus, the facts that defendant Quinn spoke with the State's Attorney's Office and the defendants sought an arrest warrant on the advice of the State's Attorney's Office show that their actions were reasonable.

The Second Circuit has held that "[t]he extent to which a police officer investigates a complainant's allegations before applying for an arrest warrant is a matter of discretion" for which he may be afforded qualified immunity. *Kafafian v. Young*, 477 F. App'x 762, 763-64 (2d Cir. 2012) (summary order).  To sustain the defense of qualified immunity for a false arrest claim, the defending officer need only show "arguable probable cause" since police officers may

make reasonable mistakes. *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (citations omitted).

The defendants received reasonably trustworthy information from Bastone and the Facebook post that the plaintiff had violated the criminal protective order. Based on this information and, after speaking to the State's Attorney's Office, they sought an arrest warrant. This information at the very least shows arguable probable cause. Thus, even if the arrest warrant was not supported by probable cause, the defendants are protected by qualified immunity.

### C. State Law Claim

The only remaining claim against the defendants is a state law claim for intentional infliction of emotional distress. The district court has discretion either to retain or decline supplemental jurisdiction over a state law claim asserted against a defendant who has no federal claims pending against him. *See Briarpath Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 208 (2d Cir. 2004) (noting that the court can exercise supplemental jurisdiction over a state law claim even if "asserted against a party different from the one name in the federal claim" but "[t]he fact that the district court has the power to hear these supplemental claims does not mean, of course, that it must do so. Instead, it may decline to exercise its power based on the factors laid out in 28 U.S.C. § 1367(c)."); *Kaplan v. County of Orange*, 528 F. Supp. 3d 141, 160-61 & n.6 (S.D.N.Y. 2021) (declining to exercise supplemental jurisdiction over state law claims against certain defendants against whom no federal claims were pending; discussing discretion to do so; and citing cases).

There are four conditions that permit a district court to decline to exercise supplemental jurisdiction:

      (1) the claim raises a novel or complex issue of State law,
      (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
      (3) the district court has dismissed all claims over which it has original jurisdiction, or
      (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). As the Court has granted summary judgment on the only federal claim against the defendants, the only remaining claims against the defendants and, indeed, in this case are state law claims. Thus, condition (3) of Section 1367(c) applies. Further, no trial date has been set in this case. Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims against the defendants and against all other defendants in this case. The plaintiff may pursue those claims in state court.

## V.    Conclusion

The defendants' motion for summary judgment [**ECF No. 90**] is **GRANTED** on the federal false arrest claim. The Court declines to exercise supplemental jurisdiction over the plaintiff's state law claim for intentional infliction of emotional distress against the defendants.

In addition, as there are no other federal claims in this case, the Court declines to exercise supplemental jurisdiction over the state law claims against defendants Bastone, John Wanat, Sean Wanat, and Winters. As the Court has declined jurisdiction, the motions for summary judgment filed by Sean Wanat and John Wanat [**ECF Nos. 85, 86**] are **DENIED** as moot.

The state law claims are dismissed without prejudice and the plaintiff may pursue his state law claims in state court.

The motion to supplement the record (ECF No. 94) is GRANTED. The motion for default judgment (ECF No. 105) is DENIED, as the plaintiff may pursue his claims against Bastone in state court. The motion for clarification (ECF No. 98) is GRANTED. The Court

clarifies that because it has declined to exercise supplemental jurisdiction over all state law claims, the plaintiff may pursue his claims against Bastone and Winters in state court.

The Clerk is directed to close this case.

**SO ORDERED** this 20th day of July 2022 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge